IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAKOTA KELLER,** | |
| **Plaintiff,** | |
| v. | Case No. 25-cv-1333-RJD |
| **CHRISTIAN N. THOMAS, A. RODMAN, N. LUKE, WILSON, VAUGHN, GREGORY D. LITTLE, MS. AMY, MRS. R., and JOHN BARWICK,** | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Dakota Keller, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Keller's original complaint (Doc. 1) was dismissed without prejudice for failure to state a claim (Doc. 16), but Keller was granted leave to file an amended pleading. In his Amended Complaint (Doc. 21), Keller alleges that his due process rights were violated during two disciplinary proceedings.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of

1

screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

Keller alleges that prison officials violated his due process rights during the course of disciplinary proceedings on two disciplinary tickets he received at Pinckneyville. On September 11, 2024, Keller received a disciplinary ticket charging him with drug and drug paraphernalia (Doc. 21, p. 3). Keller alleges that he actually had a seizure, but officers smelled smoke and blamed his seizure on smoking (*Id.*). He was taken to the healthcare unit and then transferred to the segregation wing of the prison (*Id.*).

On October 15, 2024, he went before the adjustment committee for a hearing on the ticket (Doc. 21, p. 3). He informed committee member Gregory Little that it had been 35 days since he received the ticket and department rules required that a hearing take place 24 days after receipt of the ticket (*Id.*). Keller argued that the ticket should be thrown out due to the timeliness issue; he also argued that he was not guilty because he had a seizure and was not smoking (*Id.*). Little indicated that he would provide a summary to Keller but ultimately found Keller guilty of the charge. As a result, Keller received 45 days in segregation, 3 months loss of commissary restrictions, 4 months of no contact

---

Corrections and the medical providers, to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these entities.

visits, and lost 3 months of good time credit (*Id.*). Warden John Barwick approved of the findings and punishment, despite the hearing being held beyond the proper time frame (*Id.* at p. 4).

On April 17, 2025, Keller was placed in investigative status for the safety and security of the institution, but Keller was not provided with a detailed explanation as to why he was placed on investigative status (Doc. 21, p. 4). On May 1, 2025, he met with Internal Affairs ("IA") Officer N. Luke who asked him about knives and showed Keller a note from another inmate who claimed that Keller made knives (*Id.*). On May 13, 2025, he was released from investigative status, but strip searched twice before being placed in another cell (*Id.*). Internal Affairs also searched his property box outside of his presence (*Id.*). After being placed in his cell, Lieutenant ("Lt.") Hiller came to Keller's cell and directed him to cuff up. Keller was escorted back to investigative status and Hiller noted that internal affairs must have "it out for you" (*Id.*).

A few weeks after his return to investigative status, Ms. Webb brought Keller a disciplinary ticket, but he refused to sign for receipt of it (Doc. 21, p. 4). Webb failed to leave him a copy of the ticket. Keller went on crisis watch a few days later. On June 10, 2025, Keller received a summary report on the ticket (*Id.* at p. 5). Keller disputes that he had a hearing for the ticket because he was on crisis watch at the time and officials do not come to crisis watch for hearings.[2] The report noted that he was currently housed in R6-

---

[2] In his motion for temporary restraining order, filed contemporaneously with his Amended Complaint, Keller states that he did have a disciplinary hearing on the ticket, but Little refused to call his witness (Doc. 19, p. 7).

B-12 which is a crisis watch cell (*Id.*). On July 1, 2025, he received a summary report, noting that Gregory Little found him guilty of dangerous contraband, the manufacturing and selling of weapons (*Id.*). The finding of guilt was based on the intelligence unit's investigation (Keller notes this was based on the note officials received) and informant's statements (*Id.*). Keller contends that no weapons were ever found on his person or in his box or cell (*Id.*). The summary also noted that Keller admitted to the allegations, which Keller disputes (*Id.*). Keller alleges that the summary report indicates he was in disciplinary segregation for six months and started making weapons out of boredom (*Id.*). Keller contends this is untrue because he never spent six months in segregation (*Id.*). He believes that officials are harassing him with the disciplinary tickets (*Id.*). Despite his claims, Warden Barwick approved the findings and Keller received 3 months of c-grade, 1 year in segregation, a disciplinary transfer, 3 months communication and other restrictions, and 1 year loss of good time credit (*Id.* at pp. 5-6).

Keller filed grievances for both disciplinary proceedings, but John Barwick denied the grievances (Doc. 21, p. 6). He appealed the grievances to the Administrative Review Board ("ARB") but failed to hear back on the grievances. On September 2 and 3, 2025, he resubmitted grievances and wrote to John Barwick, informing him that officers were harassing him (*Id.* at p. 6). He notes that he has other lawsuits pending against officers who are harassing him and placing his life in danger at the prison (*Id.*). On October 2, 2025, he finally spoke with the prisoner review board about the dangerous contraband ticket (*Id.*). He spoke to an official by the name of Mrs. R and asked for a continuance of the hearing because he did not receive prior notice of the hearing (*Id.*). He also wanted to

4

present witnesses and evidence (*Id*. at pp. 6-7). Mrs. R indicated that she needed to ask her supervisor and an official by the name of Ms. Amy came on the line and said that he was not entitled to a continuance (*Id*. at p. 7). He believes that these officials violated his due process rights by failing to allow for the requested continuance (*Id*.).

## Preliminary Dismissals

Although Keller lists Christian N. Thomas, A. Rodman, Officer Wilson, and Officer Vaughn as defendants in the case caption, he fails to include any allegations against them in his statement of claim. He alleges that he was placed on investigative status due to an investigation by internal affairs and that an officer told him that internal affairs "has it out for you", but Keller fails to allege that these named officials participated in the investigation or violated his rights in any way. In order to be liable under Section 1983, a defendant must be personally involved in the constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only internal affairs officer that Keller alleges was involved in the investigation was N. Luke (Doc. 21, p. 4). But Keller merely alleges that Luke questioned him as to whether he made knives and showed Keller the kite that internal affairs received from another inmate (*Id*.). He fails to allege that Luke issued the disciplinary ticket or was involved in the disciplinary hearing. Because Keller fails to allege that any of the officers were personally involved in any due process violation, Defendants N. Luke, Thomas, Rodman, Wilson, and Vaughn are **DISMISSED without prejudice**.

Keller also notes that he is being harassed by officers at the prison, including Officer Sanchez and Officer O'Bear. Neither individual is listed as a defendant in the case

caption and Keller alleges that their actions are the subject of other lawsuits he has pending in this district (Doc. 21, p. 6). Further, to the extent that Keller alleges that defendants in this case acted with deliberate indifference and/or retaliated against him through their "harassment" of him, Keller fails to state a claim. He merely alleges in conclusory fashion that Defendants acted with deliberate indifference and/or retaliated against him without alleging any personal involvement of the named defendants. Thus, any claim for deliberate indifference or retaliation is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Amended Complaint, the Court designates the following counts:

> **Count 1:** **Fourteenth Amendment due process claim against Gregory Little and John Barwick for finding Keller guilty of possessing drugs after failing to have a timely hearing.**
>
> **Count 2:** **Fourteenth Amendment due process claim against Gregory Little and John Barwick for failing to hold a hearing and basing Keller's guilt of contraband on faulty evidence.**
>
> **Count 3:** **Fourteenth Amendment due process claim against Ms. Amy and Mrs. R for failing to continue his hearing before the prison review board and preventing him from presenting his witnesses and evidence.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be**

**considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim, the Court undertakes a two-part analysis. *Id*. The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id*. (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)). *See also Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024) (internal citations omitted) ("To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest.").

**Count 1**

Keller fails to state a viable due process claim as to his drug and drug paraphernalia charge. Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

But as to Count 1, Keller merely alleges that officials violated the Illinois Administrative Code by holding his hearing after the 24 business days allowed for such a hearing.[4] Because Keller did not have a hearing until 35 days after the issuance of his disciplinary ticket, he alleges that the ticket is invalid. But Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws or … departmental regulations and … practices." *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003); *Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill. App. Ct. 2000) (prison regulations were "never intended to confer rights on inmates or serve as a basis for constitutional claims"). Because Keller only raises a violation of the Illinois Administrative Code regarding the timing of a prison disciplinary hearing, he fails to state a due process claim and Count 1 is **DISMISSED without prejudice**.

**Count 2**

As to Keller's disciplinary ticket for dangerous contraband, Keller alleges that he received 3 months C-grade, 1 year segregation, a disciplinary transfer, 3 months commissary restrictions, 3 months audio/visual restrictions, 6 months no contact visits,

---

[4] According to the Illinois Administrative Code, a disciplinary hearing is actually supposed to be held "within 14 days after the commission of the offense by an offender or its discovery, whenever possible, unless the offender has received a continuance or is unable or unavailable for any reason to participate in the hearing." 20 Ill. Admin. Code § 504.80(a).

and 1 year loss of good time (Doc. 21, p. 6). He alleges that the adjustment committee failed to have a hearing, and that the committee's finding of guilt was not supported by the evidence. Such claims could give rise to a due process violation under *Wolff*. Keller did lose good time credit as part of his discipline and it is not clear from the pleading whether that disciplinary "conviction" has since been invalidated or expunged. Thus, his claims may ultimately be barred by the decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) which bars an inmate from bringing a civil rights action for the sanctions implemented as a result of a faulty disciplinary ticket and hearing until after the disciplinary proceeding is overturned. *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994); *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *McAtee v. Cowan*, 250 F.3d 506, 508 (7th Cir. 2001). But because the Court is unable to discern at this stage whether Keller's punishment was expunged or not, the Court will allow Count 2 to proceed.

**Count 3**

Finally, Keller alleges that officials at the Prison Review Board failed to grant him a continuance to present evidence when they reviewed the disciplinary ticket. But the Prison Review Board "can only reduce or ratify the recommended amount of revoked credit and is without power to extend the amount of time that an inmate may be incarcerated." *Lucas v. Montgomery*, 583 F.3d 1028, 1031 (7th Cir. 2009). The process in *Wolff* is not implicated by this body which makes no finding of facts and "only approves, reduces or abrogates penalties based on the prison adjustment committee's findings." *Id*. Thus, any claim against the members of the Prison Review Board for due process violations is also **DISMISSED**.

**Motion for TRO**

In addition to his Amended Complaint, Keller filed a motion for emergency temporary restraining order ("TRO") and preliminary injunction (Doc. 19). Keller alleges that internal affairs is "harass[ing]" him with their issuance of disciplinary tickets and he believes they are punishing him for filing grievances. Keller further notes that he has two pending lawsuits against individuals who he believes are also harassing him (*Id.* at pp. 1-2). Neither individual in those cases is a party to his lawsuit.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Keller fails to show a likelihood of success on the merits in this case. He alleges in his motion that officials who are not a party to this case continue to harass him. Keller also argues that his legal mail has been tampered with, but he fails to allege that any of the named

defendants in this case participated in the tampering, nor is the tampering a claim in this case. He does allege that Internal Affairs continue to issue faulty disciplinary tickets against him, but Keller failed to state a viable claim against any of the Internal Affairs officers. Thus, he fails to demonstrate a likelihood of success on his claims and his motion for injunctive relief is **DENIED**.

## Disposition

For the reasons stated above, Count 2 shall proceed against Gregory D. Little and John Barwick. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Gregory Little and John Barwick: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Keller. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Keller, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Keller, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Keller is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 22, 2025.**

*/s/ Reona J. Daly*
**REONA J. DALY**
**U.S. Magistrate Judge**

## **Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**